**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

DELVILLE BENNETT,

                         Plaintiff,

           v.                                                              No. 9:17-CV-849
                                                                           (GTS/CFH)
FLETCHER, et al.,

                         Defendants.

─────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

Delville Bennett
c/o BoBo Bergen House
1173 Bergen Street
Brooklyn, New York 11213
Plaintiff pro se

Attorney General for the                   DAVID A. ROSENBERG, ESQ.
   State of New York                        Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se Delville Bennett ("plaintiff"), who was, at all relevant times, in the

custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants

Correction Officer ("C.O.") T.A. Jiguer ("C.O. Jiguer") and C.O. Robert J. McGrath

─────────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("C.O. McGrath")—who, at all relevant times were employed at Franklin Correctional Facility ("Franklin")—violated his constitutional rights under the Eighth Amendment. See Dkt. No. 26 ("Amen. Compl.").

Following initial review of plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), Chief District Judge Glenn T. Suddaby dismissed numerous claims and defendants from the action. See Dkt. No. 30 at 24-25. The Court held that the following claims survived *sua sponte* review: plaintiff's (1) Eighth Amendment excessive force claims (a) against C.O. Jiguer related to an incident that allegedly occurred on November 10, 2014, and (b) C.O. McGrath related to incidents that allegedly occurred on February 28, 2015, and August 18, 2016[2]; and (2) racial discrimination claims against C.O. Jiguer and C.O. McGrath. See id. at 25.

Presently pending before the Court is C.O. McGrath's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 65.  Plaintiff opposed C.O. McGrath's motion, see Dkt. No. 71, and C.O. McGrath filed a reply.  See Dkt. No. 73.  For the reasons that follow, it is recommended that C.O. McGrath's motion be granted.

## I. Background

### A. Facts[3]

---

[2]  The date of this incident is listed as August 19, 2016, in the Court's previous orders.  See Dkt. No. 7 at 10, 14, 39; Dkt. No. 30 at 2, 6, 7.  However, plaintiff's grievance concerning this alleged incident makes clear that the correct date is August 18, 2016.  See Dkt. No. 65-6 at 26.  Accordingly, herein, the Court will accept August 18, 2016 as the date of the alleged incident.

[3]  Only the facts relevant to plaintiff's claims against C.O. McGrath—the only moving defendant—will be discussed herein.  See Dkt. No. 65 at 1.

The facts are reviewed in the light most favorable to plaintiff as the non-moving party.  See subsection II.A., infra.  At all relevant times, plaintiff was an inmate incarcerated at Franklin.  See Amen. Compl. at 4 ¶ 13.[4]

### 1. February 28, 2015 Incident

On February 28, 2015, at approximately 1:05 P.M., plaintiff visited the Franklin law library to obtain copies of legal materials.  See Dkt. No. 26-1 at 36 ¶ 3.  C.O. Gumbus[5] asked plaintiff which materials he wanted copies of and for his copy card. See Dkt. No. 65-4 at 218.  In reply, plaintiff stated, in a loud voice, "I don't want you to make the copies, I want one of the [c]lerk's [sic] to make my copies.  I'm a grown ass man, and I have a right to speak, so you['re going to] hear me."  Id.  The other inmates present in the law library were "drawn to the commotion that [plaintiff] was" making.  Id. C.O. Gumbus instructed plaintiff to exit the law library and to sit on a bench in the hallway until it was time to return to his housing unit.  See Dkt. No. 26-1 at 36 ¶ 3; Dkt. No. 65-4 at 75.  C.O. Gumbus then "shouted to" C.O. McGrath, who was stationed down the hall, to come down to the law library.  Dkt. No. 65-4 at 77.

Plaintiff states that while he was waiting on the bench, he "overheard [C.O.] McGrath" tell another correction officer that plaintiff was "a cock sucker mother fucker [who] just can[']t get it, . . . he should be charge[d] with threats, creating a disturbance[,] and direct order."  Dkt. No. 26-1 at 35-36 ¶ 3; see Dkt. No. 65-4 at 78.  According to plaintiff, C.O. McGrath "threw [him] up on the wall as if he was frisking [plaintiff] for no

---

[4] "Plaintiff was released from DOCCS custody on or about March 14, 2018."  Dkt. No. 65-2 at 1 n.1.

[5] C.O. Gumbus was terminated as a party to this action pursuant to the Court's June 2018 Order on initial review of the Amended Complaint.  See Dkt. No. 30 at 24.

reason." Dkt. No. 65-4 at 81. Plaintiff also states that C.O. McGrath commented, "I kn[e]w that I would catch you again mother fucker, . . . called the [s]ergeant[,] put [plaintiff] on the wall and said . . . 'if you were not that old I would send you to the infirmary and hit [you] four . . . times to the equivalent of [your] age in [your] short ribs[,] and [told plaintiff] that [he was] on full bed." Dkt. No. 26-1 at 36 ¶ 4; see Dkt. No. 65-4 at 78, 80, 87-88.[6] Plaintiff understood C.O. McGrath's statements to mean that "he would [have] attack[ed plaintiff] physically, sadistically," "[i]f [plaintiff] wasn't so old." Dkt. No. 65-4 at 88.[7] In response to defense counsel's question, "[s]o [C.O. McGrath] did not attack you sadistically?" plaintiff stated "[t]hat's what he said he would—that's [C.O.] McGrath." Id. Further, in response to defense counsel's inquiry, "[d]id [C.O. McGrath] actually do anything else after" making the statement about putting plaintiff in the infirmary if he weren't so old, plaintiff replied "[i]f I can recall, sir, he sent me to the dorm." Id. When asked whether he "sustained any injury" from C.O. McGrath placing him against the wall, plaintiff stated, "[j]ust the roughing up, excessive force, sir." Id. at 93. Plaintiff explained that, following this interaction with C.O. McGrath, he walked, unescorted, back to his dorm. See id. at 89. Plaintiff testified that he suffered "mental anguish," "mental distortion," and had "nightmares" as a result of the alleged incident on February 28, 2015, and informed medical staff that he had been "handled with force." Id. at 93, 94.

---

[6] Plaintiff testified at deposition that being on "full bed" meant being on keep-lock status. Dkt. No. 65-4 at 95.

[7] Plaintiff was approximately 71 years old at the time of the February 28, 2015 incident. See Dkt. No. 65-2 at 2 n.4.

C.O. Gumbus issued plaintiff a misbehavior report relating to the February 28, 2015 incident, charging him with threats, creating a disturbance, and failing to obey a direct order in violation of DOCCS Rules 102.10, 104.13, and 106.10, respectively.  See Dkt. No. 65-4 at 218.  Plaintiff filed a grievance concerning this alleged incident, asserting that C.O. McGrath used unprofessional language and assaulted him.  See Dkt. No. 26-1 at 34, 35-36.  On March 3, 2015, plaintiff was examined by Franklin healthcare personnel.  See Dkt. No. 65-4 at 215-16.  An Inmate Injury Report was completed, in which plaintiff stated, he suffered an injury on February 28, 2015 at approximately 1:05 P.M.  See id. at 215.  Under the heading "Inmate's Statement," plaintiff wrote "[h]e hit me 4x right here," and Franklin personnel noted that plaintiff "point[ed] to [his right] rib cage."  Id. (parenthesis omitted).  The report further states under the caption "[d]escription of the injury," "subjective pain [right] rib cage," "0 marks noted."  Id.  Moreover, the report notes that no medical services were provided to plaintiff as a result of this examination.  See id. at 216.

### 2. August 18, 2016 Incident

On the morning of August 18, 2016, after leaving his cell, plaintiff states that he was walking by C.O. McGrath's post when he was "confronted by [C.O. McGrath] and without any form of provocation . . . immediately with excessive force at the number [three] booth badly beaten up . . . with internal body blows."  Amen. Compl. at 2 ¶ 5; see Dkt. No. 65-4 at 102-06.  Plaintiff states that C.O. McGrath then brought him "to the ground on his face and inflicted very heavy blows."  Id.; see Dkt. No. 65-4 at 111-12.  Plaintiff testified at deposition that he did not recall whether C.O. McGrath said anything

to him during this alleged assault.  See Dkt. No. 65-4 at 107.  On August 26, 2016, plaintiff filed a grievance concerning the alleged August 18, 2016 incident in which he assrted that C.O. McGrath "started cursing a lot of profanities," "threw [plaintiff] on the frisking wall with excessive force, then kicked him to the ground on his face[,] kneeled on his back[,] applied [hand]cuffs," and again "started to kick [him] several times with a lot of body blows."  Dkt. No. 65-6 at 26.  The superintendent denied plaintiff's grievance on September 27, 2016.  See id. at 28; Dkt. No. 26-1 at 34.  The superintendent observed that plaintiff "was evaluated by medical staff and did not have any injuries" and that C.O. McGrath "issued [him] a [m]isbehavior [r]eport" as a result of the incident. Id.; Dkt. No. 26-1 at 34.  The Appeal Statement on the Inmate Grievance Program (IGP) form ("form 2133") concerning the August 18, 2016 incident was left blank.  See Dkt. No. 65-6 at 28; Dkt. No. 26-1 at 34.

## B. C.O. McGrath's Motion for Summary Judgment

### 1. August 18, 2019 Incident

C.O. McGrath first contends that plaintiff's Eighth Amendment excessive force claim against him relating to the alleged August 18, 2016 incident must be dismissed because plaintiff failed to exhaust administrative remedies.  See Dkt. No. 65-2 at 8-10. In support of this contention, C.O. McGrath offers the declaration of Judy Tavernier ("Tavernier"), Franklin IGP Supervisor ("IGPS"), who states that, in her role "[a]s the IGPS, [she] is fully familiar with the procedures followed in processing inmate grievances at Franklin" and that, "[a]mong [her] duties as IGPS at Franklin, [she is] responsible for maintaining the grievance records filed by inmates at Franklin."  Dkt. No.

65-6 at 2 ¶ 4.  Tavernier declares that the IGP policies and procedures are contained in

7 N.Y.C.R.R. 701 *et seq.* and DOCCS Directive No. 4040, which are both available at

the Franklin law library, and are attached to her declaration.  See id. at 2 ¶ 5; see id. at

7-24.  Tavernier states that she "conducted a thorough search of Franklin's grievance

records to determine if [he] appealed [his] grievance about the alleged use of force by

[C.O.] McGrath on August 18, 2016."  Dkt. No. 65-6 at 4 ¶ 14.  Tavernier notes that, "[i]f

[plaintiff] had returned form 2133 to . . . appeal the [s]uperintendent's determination of

[his August 26, 2016 grievance], the original would be in his grievance file."  Id. at 5 ¶

18.  However, Tavernier states, "[n]o such document is in [plaintiff's] grievance file."  Id.

Therefore, Tavernier concludes, "[i]nsofar as [p]laintiff never returned form 2133 with a

signature and explanation that he wished to appeal, he did not appeal the

[s]uperintendent's determination to CORC."  Id. at ¶ 20.  In further support, defendants

observe that the Appeal Statement contained on plaintiff's form 2133 related to his

August 26, 2016 grievance, is blank and unsigned.  See Dkt. No. 65-2 at 10; Dkt. No.

65-6 at 28; Dkt. No. 26-1 at 34.

　　　C.O. McGrath also proffers the sworn declaration of Rachael Seguin ("Seguin"),

Assistant Director of DOCCS IGP.  See Dkt. No. 65-7 at 1 ¶ 2. Seguin states that her

"duties and responsibilities include maintaining records of appeals of grievances filed by

inmates" and that she "oversee[s] records that DOCCS maintains of appeals received

by the Central Office Review Committee ("CORC"), which is the final level of

administrative review in the DOCCS [IGP]."  Id.  Seguin declares that "[w]hen an inmate

appeals a grievance to CORC, DOCCS Directive [No.]4040 stipulates that it is

[d]epartment policy to maintain grievance files and logs for the current year and the

previous four calendar years," and that "CORC [also] maintains files of grievance appeals to CORC in accordance with the directive." Id. at 4 ¶ 12. "In fact," Seguin explains, "the CORC computer database" maintains "records of appeals of grievances received from [IGP] since the 1990s." Id. In addition, Seguin explains that, "DOCCS policies and procedures regarding the IGP are set forth in [7 N.Y.C.R.R. § 701 et seq.] and mirrored in DOCCS Directive [No. 4040]," which "is available in the [l]aw [l]ibrary at every DOCCS correctional facility (and was so available at all times relevant to this action.)." Id. a 1-2 ¶¶ 4,5.

Moreover, Seguin declares that "[c]omplaints or issues such as those" described by plaintiff concerning C.O. McGrath's alleged August 18, 2016 assault "are the proper subject for a grievance under DOCCS grievance procedures." Dkt. No. 65-7 at 3 ¶ 11. Seguin states that "a diligent search of CORC records . . . for appeals received from facility-level grievance determinations for plaintiff" revealed that "CORC did not receive any appeal from plaintiff regarding [his] grievance . . . alleging that [C.O.] McGrath assaulted him at Franklin on August 1[8], 2016." Id. at 4 ¶¶ 15, 16. Attached to Seguin's declaration is the "computer printout from the CORC database reflecting the results of [her] search." Id. at ¶ 15; see id. at 8. Seguin notes that, "[a]lthough CORC . . . received over 40 grievances from plaintiff while he was incarcerated at Franklin and other facilities . . . , CORC did not receive any appeals from him or any grievances he initially filed at the facility level between July 2016 and December 2016." Id. at 5 ¶ 17. Thus, Seguin concludes, "plaintiff did not appeal to CORC regarding the alleged incident involving [C.O.] McGrath on August 1[8], 2016." Id. at ¶ 18.

### 2. February 28, 2015 Incident and Plaintiff's Racial Discrimination Claims

C.O. McGrath contends that plaintiff's Eighth Amendment excessive force and racial discrimination claims based on the alleged February 28, 2015 incident must be dismissed because plaintiff has failed to establish that C.O. McGrath used improper force against him or used racial slurs.  See Dkt. No. 65-2 at 10-12.  In support of this contention, C.O. McGrath points to plaintiff's deposition testimony in which plaintiff stated only that, on February 28, 2015, C.O. McGrath placed him against the wall in a frisk position and that plaintiff walked, unescorted, back to his dorm immediately after speaking with C.O. McGrath.  See id. at 12; see Dkt. No. 65-4 at 89.  Moreover, C.O. McGrath notes, although plaintiff alleges that C.O. McGrath placed him against the wall, he does not explain what, if any, force was used, and does not allege that he suffered physical injury as a result thereof.  See Dkt. No. 65-2 at 12.  Furthermore, C.O. McGrath argues that plaintiff's allegation that C.O. McGrath made hypothetical threats against him on February 28, 2015, is insufficient to support his claim for excessive force because "verbal threats 'do not amount to violations of constitutional rights.'"  Id. at 13 (quoting Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (additional citations omitted).

In further support of his arguments, C.O. McGrath proffers his own sworn declaration in which he states that, "[o]n February 28, 2015, [he] assisted another [C.O.] when [p]laintiff was creating a disturbance and disobeying orders in the [l]aw [l]ibrary at Franklin," and declares that he "did not strike [p]laintiff], . . . did not use any manner of physical force on him, and . . . did not threaten him."  Dkt. No. 65-5 at 2 ¶ 9.  In addition, C.O. McGrath declares that he "never use[s] vulgar or racist language when talking to

inmates, and . . . did not do so on February 28, 2015, August 19, 2016, or at any other time." Id. at ¶ 10.  Thus, C.O. McGrath posits, plaintiff's excessive force and racial discrimination claims relating to the alleged February 28, 2015 incident must be dismissed.

### C. Plaintiff's Response

Plaintiff contends that his response, which he styles as a "motion," "is being submitted . . . to dismiss any and every summary judgment [in] connection to the [present] case." Dkt. No. 71 at 1.[8]  Without once specifically mentioning C.O. McGrath, plaintiff argues only that "[d]efendants have violated the law by using physical force against [him] without need or provocation . . . maliciously, sadistically, assault and battery, constituted cruel and unusual punishment." Id. at 2.  In addition, plaintiff states that he is currently suffering permanent injuries and uses a walker and a cane.  See id.

### D. C.O. McGrath's Reply

In reply, C.O. McGrath contends that plaintiff's response "fails to address any of the legal arguments supporting the granting of summary judgment . . . , let alone raise any genuine issues of material fact." Dkt. No. 73 at 1.  Accordingly, C.O. McGrath "rests on the arguments set forth in his [m]emorandum of [l]aw" in support of his motion for summary judgment. Id.  In addition, C.O. McGrath argues that, due to plaintiff's failure to submit a proper response, including his failure to respond to C.O. McGrath's

---

[8] Although plaintiff styled his response as a "motion," the Court will treat this pro se submission as only an opposition to C.O. McGrath's motion for summary judgment, as "plaintiff makes no argument and provides no evidence that suggests that a motion for summary judgment in [his] favor . . . is warranted (or even sought)." Cotz v. Mastroeni, 476 F. Supp. 2d 332, 354 (S.D.N.Y. 2007).

statement of material facts, "the Court should deem the facts contained in [C.O.

McGrath's] Local Rule 7.1(a)(3) statement as having been admitted."  Id.[9]

## II. Discussion[10]

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted

only if all the submissions taken together "show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247 (1986).  The moving party has the burden of showing the

absence of a genuine dispute of material fact by providing the Court with portions of

"pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any," which support the motion.  Celotex, 477 U.S. at 322; see

FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as

determined by the governing substantive law; a "dispute about a material fact is

'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Anderson, 477 U.S. at 248.

---

[9]  In support of his motion, C.O. McGrath filed a Statement of Material Facts in compliance with N.D.N.Y.L.R. 7.1(a)(3), which provides, in relevant part, "WARNING: If you do not submit a proper response to the defendants' statement of material facts, **the Court may deem you to have admitted the defendants' factual statements**," and "[i]f you do not file a proper response to this motion, the Court may grant the motion **and dismiss some or all of your claims**."  Dkt. No. 65 at 3; see Dkt. No. 65-1. Plaintiff's response does not include a statement of material facts and fails to address the legal arguments raised in C.O. McGrath's motion.  See Dkt. No. 71.  Therefore, notwithstanding plaintiff's pro se status, the Court will "follow the practice of enforcing [N.D.N.Y.]L.R. 7.1(a)(3) and accept the facts set forth in [d]efendant['s] Material Statement of Facts as uncontroverted to the extent those facts are supported by record evidence."  Richard v. LeClaire, 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *4 (N.D.N.Y. May 6, 2019).

[10]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Id. at 248, 250; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curium)). Furthermore, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not

12

> suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

## B. Abandonment of Claims

Despite C.O. McGrath's express warning of the consequences of failing to properly respond to his motion for summary judgment, see Dkt. No. 65 at 3, plaintiff did not respond to any of the legal arguments raised in the motion for summary judgment. See generally Dkt. No. 71 at 1-2.  Accordingly, plaintiff's claims against C.O. McGrath should be dismissed as abandoned.  See Maher v. All. Mortg. Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks and citation omitted)); see also Wiggan v. New York City Dep't. of Correction, No. 12-CV-1405 (GBD/HBP), 2014 WL 4631456, at *3 (W.D.N.Y. Sept. 16, 2014) (granting summary judgment and dismissing claims, as abandoned, that a pro se inmate failed to address in response to the defendants' motion for summary judgment); Martien v. City of Schenectady, No. 1:04-CV-679 (FJS/RFT), 2006 WL 1555565, at *2 (N.D.N.Y. June 2, 2006) (deeming abandoned and granting summary judgment in favor of the

defendant as to a claim that the pro se plaintiff did not address in response to the
defendant's motion for summary judgment).  In any event, even if plaintiff had
responded to the arguments raised in C.O. McGrath's motion for summary judgment,
C.O. McGrath would still be entitled to summary judgment for the reasons that follow.

## C. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any
administrative remedies available to him or her before bringing an action for claims
arising out of his or her incarceration.  See 42 U.S.C. § 1997e(a) ("No action shall be
brought with respect to prison conditions under section 1983 . . . by a prisoner confined
in any jail, prison, or other correctional facility until such administrative remedies as are
available are exhausted.").  The exhaustion requirement applies "'to all inmate suits
about prison life, whether they involve general circumstances or particular episodes,
and whether they allege excessive force or some other wrong.'"  Cucchiara v. Dumont,
No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019)
(quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).  Further, the exhaustion
requirement applies even where the prisoner seeks relief not available in the
administrative grievance process, such as money damages.  See Porter, 534 U.S. at
524.  "To exhaust administrative remedies, the inmate must complete the full
administrative review process set forth in the rules applicable to the correctional facility
in which he or she is incarcerated."  Cuadrado v. Brueault, No. 9:14-CV-1293
(DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549
U.S. 199, 218 (2007).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted).  Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id.  However, in Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ____ U.S. ____ 136 S. Ct. 1850, 1862 (2016).  Thus, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA.  See Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

However, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, ____ U.S. ____, 136 S. Ct. at 1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id.  Lastly, administrative remedies are

unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

There is no genuine dispute that, at all relevant times, DOCCS had in place a well-established three-step administrative procedure for inmate grievances known as the IGP. See Dkt. No. 65-6 at 7-24; Dkt. No. 65-7 at 2-3 ¶¶ 7-9; see also N.Y. COMP. CODES R. & REGS. (7 N.Y.C.R.R.) § 701.5. First, the inmate must file a complaint with an IGP clerk within 21 calendar days of the alleged incident. See 7 N.Y.C.R.R. § 701.5(a)(1). An IGP representative has 16 calendar days to informally resolve the issue. See id. at § 701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within 16 calendar days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. See id. at § 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. See id. at § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven calendar days after receipt of the superintendent's determination. See id. at § 701.5(d)(1)(i). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty 30 calendar days from the time the appeal was received." Id. at § 701.5(d)(3)(ii).

"Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner

seek relief pursuant to section 1983 in a federal court." Murray v. Goord, 668 F. Supp. 2d 344, 355-56 (N.D.N.Y. 2009).  On a motion for summary judgment, "[t]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action." McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report and recommendation adopted, No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018).

### 1. Plaintiff Failed to Exhaust his Administrative Remedies

As an initial matter, although plaintiff is no longer incarcerated, the exhaustion requirements apply to his claims because he was incarcerated at the time he filed his lawsuit.  See Knight v. Mun. Corp., No. 14-CV-3783 (PAE/JCF), 2016 WL 4017208, at *2 (S.D.N.Y. May 27, 2016), report and recommendation adopted, No. 14-CV-3783 (PAE/JCF), 2016 WL 4030632 (S.D.N.Y. July 26, 2016) (citing Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2004)); McNab v. New York, No. 9:12-CV-26 (GTS/ATB), 2015 WL 13744629, at *5 (N.D.N.Y. Dec. 7, 2015) ("[T]he exhaustion requirement applies to former inmates who commenced the action while still in custody but were released while the action was pending."), report and recommendation adopted sub nom. McNab v. Doe, No. 9:12-CV-26 (GTS/ATB), 2016 WL 324994 (N.D.N.Y. Jan. 27, 2016), aff'd, 686 F. App'x 49 (2d Cir. 2017) (summary order); cf. Greig v. Goord, 169 F.3d 165, 167 (2d Cir. 1999) ("[L]itigants . . . who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision." (emphasis added)).

17

C.O. McGrath has met his burden of establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies with respect to his claims relating to the alleged August 18, 2016 incident.  The sworn declarations of Tavernier and Seguin and accompanying exhibits make clear that neither Franklin IGP nor CORC have any record of plaintiff filing an administrative appeal relating to that claim.  See Dkt. No. 65-6 at 4 ¶ 14, 5 ¶ 18, 20; Dkt. No. 65-7 at 4 ¶¶ 15, 16-18.  Indeed, as C.O. McGrath points out, plaintiff's own documentary evidence demonstrates that he never appealed the superintendent's denial of his August 26, 2016 grievance to CORC, as the Appeal Statement on his form 2133 relating to his that grievance was left blank and unsigned.  See Dkt. No. 26-1 at 34. Thus, C.O. McGrath has established that plaintiff failed to exhaust all available administrative remedies with respect to his claims relating to the alleged August 18, 2016 incident by failing to appeal his grievance to CORC.  See also Omaro v. Annucci, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies."). Moreover, plaintiff's conclusory assertion that he "has demonstrated exhaustion" is belied by the record and does not create a genuine issue of material fact.  Amen. Compl. at 20 ¶ 61; see Hicks, 593 F.3d at 166.  Furthermore, no exception to the mandatory exhaustion requirement applies here.  As the record evidence demonstrates, the inmate grievance process, as set forth in 7 N.Y.C.R.R. § 701 *et seq.* and DOCCS Directive No. 4040, was available to plaintiff at the Franklin law library and plaintiff was well-versed in that process as evidenced by the more than 40 grievances and appeals

he filed over the course of his incarceration at Franklin and other DOCCS facilities.  See Dkt. No. 65-6 at 2 ¶ 5; Dkt. No. 65-7 at 1-2 ¶¶ 4,5, 5 ¶ 17, 8.

Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired.  See Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004).  However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile.  See id. at 88; see also Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice.").  Here, more than one year and five months passed between the superintendent's September 7, 2016 denial of plaintiff's grievance and his release on March 14, 2018, during which time plaintiff failed to administratively appeal the superintendent's determination to CORC.  See Dkt. No. 26-1 at 34; Dkt. No. 65-2 at 1 n.1.  Consequently, dismissal with prejudice of plaintiff's Eighth Amendment excessive force and racial discrimination claims relating to the alleged August 18, 2016 incident is appropriate.  See Berry, 366 F.3d at 88 (holding that a former inmate's federal lawsuit was properly dismissed with prejudice where he failed to exhaust available administrative remedies despite being incarcerated "for several months after the onset of the conditions that gave rise to his complaints and prior to release").

Accordingly, in the alternative to dismissal of plaintiff's claims relating to the alleged August 18, 2016 incident as abandoned, it is recommended that these claims be dismissed with prejudice for failure to exhaust available administrative remedies.

### D. Eighth Amendment Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

### 1. Excessive Force—February 28, 2015

To establish an Eighth Amendment excessive force claim, a plaintiff must satisfy both objective and subjective elements.  See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).  The objective element is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted [is] sufficiently serious to warrant Eighth Amendment protection."  Hudson, 503 U.S. at 8 (internal quotation marks and citation omitted); Blyden, 186 F.3d at 262.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Sims, 230 F.3d at 22 (internal quotation marks, alteration, and citation omitted).  However, "the malicious use of force to cause harm[] constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries.

Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotation marks and citations omitted).  "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Id. at 7.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citations omitted).  Thus, the key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[] harm." Hudson, 503 U.S. at 7 (internal quotation marks and citations omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (Observing that the Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases—"not whether a certain quantum of injury was sustained.") (internal quotation marks and citation omitted).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:

> the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Here, C.O. McGrath has established entitlement to summary judgment dismissing plaintiff's Eighth Amendment excessive force claim based on the alleged February 28, 2015 incident.  Even viewing the evidence in the light most favorable to plaintiff as the nonmoving party, the documentary evidence establishes that, at most, C.O. McGrath used *de minimis* force on plaintiff when he "threw" plaintiff against a wall in a frisk position after plaintiff caused a disruption and disobeyed orders in the Franklin law library on February 28, 2015.  Dkt. No. 65-4 at 81; Dkt. No. 65-4 at 218; see Tavares v. City of New York, No. 08-CV-3782, 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011) (holding that a pat frisk where the plaintiff was "forcefully 'compressed' against the wall" was not a violation of the Eighth Amendment and noting that "[c]ourts in this Circuit have routinely found such types of minimal injuries and pain insufficiently serious or harmful to satisfy the objective element of the Eighth Amendment analysis"); Show v. Patterson, 955 F. Supp. 182, 192, 193 (S.D.N.Y. 1997) (finding only *de minimis* force used where officer "push[ed an inmate against the wall" "immediately following a prison disturbance," which resulted in "no broken bones, bruises[,] or swelling"). Indeed, plaintiff's Inmate Injury Report—which does not name C.O. McGrath—indicates only that plaintiff suffered "subjective injuries" for which he received no medical treatment and sustained no visible marks as a result of the alleged February 28, 2015 incident.  Dkt. No. 65-4 at 215; see Show, 955 F. Supp at 193; see also Anderson v. Sullivan, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (granting summary judgment and dismissing an inmate's Eighth Amendment excessive force claim where the inmate had no medically determinable injuries after being pushed into a bar while being restrained). Further, although plaintiff states conclusorily that he suffers "permanent life injuries" and

uses a "walker and cane," Dkt. No. 75 at 2; see Amen. Compl. at 18, "neither his

deposition testimony nor any other evidentiary material in the record reveals that as a

result of" the alleged February 28, 2015 incident, plaintiff "suffered any physical injury"

aside from subjective pain in his ribs—which he in no way attributes to his alleged

necessity of using a walker and cane.  Wright, 554 F.3d at 270; see Phelps v.

Szubinski, 577 F. Supp. 2d 650, 663 (E.D.N.Y. 2008) (granting motion for summary

judgment where arestee's excessive force claim was "based on mere speculation [and]

conclusory allegations" and there was "no demonstrable physical injury" resulting from

the officer's actions).  Thus, any injury suffered as a result of the February 28, 2015

incident was de minimis.  See Wright, 554 F.3d at 270; see also Wilkins v. Gaddy, 559

U.S. 34, 38 (2010) (noting that an example of de minimis use of force is "[a]n inmate

who complains of a push or shove that causes no discernible injury." (internal quotation

marks and citations omitted)).

Moreover, aside from plaintiff's conclusory statements that Franklin personnel

"us[ed] physical force against [him] without need or provocation . . . maliciously,

sadistically," Dkt. No. 71 at 1, the record is devoid of evidence indicating that C.O.

McGrath used force against plaintiff "maliciously and sadistically [to] cause[] harm."

Hudson, 503 U.S. at 7 (internal quotation marks and citations omitted).  Rather, the

evidence establishes, at most, that C.O. McGrath used de minimis force "in a good-faith

effort to maintain or restore discipline" after plaintiff caused a disruption and disobeyed

orders in the Franklin law library.  Id. (internal quotation marks and citations omitted).  In

opposition, plaintiff's conclusory and self-serving allegations that C.O. McGrath

"rough[ed him] up" through the use of "excessive force" are insufficient to raise a

genuine issue of material fact.  See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983)

("mere conclusory allegations or denials are insufficient to withstand a motion for

summary judgment once the moving party has set forth a documentary case") (internal

quotation marks and citation omitted), overruled on other grounds; see also Zembko v.

Northwestern Mut. Life Ins. Co., No. 3:05-CV-918 (AHN), 2007 WL 948323, at *4 n.1 (D.

Conn. Mar. 26, 2007) ("[A] nonmovant's self-serving conclusory statements that dispute

the movant's evidence cannot create material issues of fact to avoid summary

judgment." (internal quotation marks and citation omitted)).

        In addition, as C.O. McGrath correctly argues, even if C.O. McGrath threatened

plaintiff that, but for plaintiff's age, he would have "sen[t him] to the infirmary and hit

[him] four . . . times" and used profanities, Dkt. No. 26-1 at 36 ¶ 4, given the absence of

physical injury resulting from the alleged February 28, 2015 incident, such "verbal

threats do not amount to violations of [plaintiff's] constitutional rights.'" Dkt. No. 65-2 at

13 (quoting Malsh, 901 F. Supp. at 763); see also Jermosen v. Coughlin, 878 F. Supp.

444, 449 (N.D.N.Y. 1995) ("Although indefensible and unprofessional, verbal threats or

abuse are not sufficient to state a constitutional violation cognizable under [section]

1983."); Wellington v. Langendorf, No. 9:12-CV-1019 (FJS/DEP), 2013 WL 3753978, at

*11 (N.D.N.Y. July 15, 2013) ("It is well-established that mere verbal threats, without

more, do not rise to a constitutional claim under 42 U.S.C. § 1983.").  Accordingly, it is

recommended that plaintiff's Eighth Amendment excessive force claim against C.O.

McGrath based on the alleged February 28, 2015 incident be dismissed with prejudice.


**E. Racial Discrimination**

24

"[T]he use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983." Baskerville v. Goord, No. 97-CV-6413, 1998 WL 778396, at *7 (S.D.N.Y. Nov. 5, 1998). "Where, however, such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie." Id. Here, as C.O. McGrath contends, plaintiff has proffered no factual support to establish that he used any racial slurs or epithets whatsoever. Indeed, plaintiff alleges only that C.O. McGrath was "cursing a lot of profanities" with respect to the August 18, 2016 incident, but explicitly testified at deposition that he did not recall what C.O. McGrath said at that time. Dkt. No. 65-6 at 26; see Dkt. No. 65-4 at 107. Further, plaintiff alleges only that C.O. McGrath used profanity and called him vulgar names during the alleged February 28, 2015 incident, but does not contend that he used racial slurs or epithets at that time and, as discussed above, has failed to prove that those statements were made in connection with any physical injury. See Dkt. No. 26-1 at 34-36; Banks v. Annucci, 48 F. Supp. 3d 394, 406 (N.D.N.Y. 2014) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983."). In fact, plaintiff's only allegations concerning the use of racial slurs concern C.O. Jiguer's purported statements in relation to the November 10, 2014 incident, which is not at issue on the present motion and which plaintiff does not allege that C.O. McGrath was involved. See Amen. Compl. at 4,5 ¶¶ 14, 15. Accordingly, it is recommended that plaintiff's racial discrimination claims against C.O. McGrath be dismissed.

## III. Conclusion

25

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that C.O. McGrath's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 65) be **GRANTED** in its entirety and the following of plaintiff's claims be **DISMISSED WITH PREJUDICE** insofar as asserted against C.O. McGrath:

(1) Eighth Amendment excessive force claims; and

(2) Racial discrimination claims, and it is further

**RECOMMENDED**, that the action be **TERMINATED** as to C.O. McGrath, and it is further,

**ORDERED**, that that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[11]

Dated: January 16, 2020
Albany, New York

---

[11]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

Christian F. Hummel
U.S. Magistrate Judge